## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United

States of America, acting through the United States Department of Justice and on behalf

of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human

Services ("HHS") (collectively, the "United States"); Hebrew Homes Health Network,

Inc., a.k.a. Plaza Health Network, Arch Plaza, Inc. and Arch Plaza Properties, Inc.,

formerly Hebrew Home of North Dade, Aventura Plaza, Inc., Jackson Plaza, Inc. and

Hebrew Homes of Miami Beach, Inc., Ponce Plaza, Inc. and Ponce Plaza Properties, Inc.,

Hebrew Home Sinai, Inc., South Beach Plaza, Inc., Hebrew Home of South Beach, Inc.,

and South Beach Nursing and Rehabilitation Center, Inc., University Plaza Rehabilitation

and Nursing Center, Inc. and University Plaza Properties, Inc., Hebrew Homes

Management Services, Inc. (collectively, "Hebrew Homes"), William Zubkoff ("Mr.

Zubkoff"), (collectively, "Defendants"); and Stephen M. Beaujon (also referred to as "the

Relator") (collectively, "the Parties"), through their authorized representatives.

## RECITALS

A.      Hebrew Homes operates and consists of seven skilled nursing facilities in

South Florida.  Mr. Zubkoff was the Executive Director of Hebrew Homes from January

1, 2006 up until March 23, 2015.

B.      On March 7, 2012, Stephen M. Beaujon (the "Relator") filed a *qui tam*

action in the United States District Court for the Southern District of Florida, captioned

*United States ex rel. Stephen M. Beaujon v. Plaza Health Network aka Hebrew Homes*

*Health network, Inc.*, Case No. 12-20951-MORENO, pursuant to the *qui tam* provisions

of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action").  The Relator alleges

that Defendants violated the Anti-Kickback Statute ("AKS") by paying physicians as

sham medical directors in exchange for the physicians' Medicare patient referrals. The

AKS prohibits the payment of money or anything of value to induce the referral of

Medicare patients. *See* 42 U.S.C. § 1320a-7b. The Relator claims that the medical

directors' referrals to the Defendants violated the AKS because their medical director

positions were a sham, and the salaries paid to them were compensation for their

referrals. The Relator further alleges that Hebrew Homes improperly billed Medicare

and Medicaid by billing for services that were not covered by the skilled nursing facility

benefit; not medically reasonable and necessary; not actually provided; not skilled in

nature; and by billing for individual therapy when group or concurrent therapy was

provided. Additionally, Relator alleges that the Defendants created false records to

support the services billed to Medicare and Medicaid. Relator further alleges that

Defendants' scheme to increase Medicare reimbursement through illegal referrals

improperly inflated the value of Defendants' business, thereby allowing Defendants to

obtain larger loans from the United States Department of Housing and Urban

Development than were otherwise appropriate and necessary. Finally, the Relator alleges

that he alerted the Defendants of and objected to the illegal practices alleged in this

Paragraph, and as a result, he was subjected to retaliatory employment action by the

Defendants in violation of 31 U.S.C. § 3730(h).

        C.     The United States contends that Defendants submitted or caused to be

submitted claims for payment to the Medicare Program (Medicare), Title XVIII of the

Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1.

D.    The United States contends that it has certain civil claims against the Defendants arising from Medicare patient referrals from certain medical directors (the "Medical Directors"), in violation of the AKS. The United States claims that the Medical Directors' referrals violated the AKS because their positions as medical directors were a sham, and their salaries as the Medical Directors were actually compensation for their referrals. Further, the United States alleges that the Medical Directors were not bona fide employees of Hebrew Homes because their positions as medical directors were a sham and they were being compensated for their referrals. *See* 42 U.S.C. § 1320a-7b(b)(3)(B) (the AKS contains a safe harbor and exception for compensation paid to "bona fide" employees). The United States contends that evidence proving the fraudulent conduct described in this Paragraph includes:

1.    Defendants drafted and provided the Medical Directors with uniform contracts that detailed numerous job duties for the medical director position.

2.    As corroborated by statements made by certain of the Medical Directors to the United States, the Medical Directors did not perform any, or nearly any, of the job duties listed in their contracts, but nonetheless were paid the salaries provided in their contracts.

3.    The Medical Directors' patient referrals, without exception, increased exponentially once the Defendants contracted and paid them as medical directors.

4.    Hebrew Home employees recommended via E-mail increasing the salary of various Medical Directors because of their high number of patient

3

referrals; and recommended decreasing the salary of or terminating Medical Directors for their lack of patient referrals.

E.      As a result, the United States contends that Defendants knowingly submitted skilled nursing claims to Medicare that violated the AKS, during the period from January 1, 2006 to the Effective Date of this Agreement.  The conduct discussed in Paragraph D and this Paragraph is referred to below as the "Covered Conduct."

F.      As of March 23, 2015, Mr. Zubkoff is no longer the Executive Director of Hebrew Homes or an employee of Hebrew Homes.

G.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs incurred up through May 1, 2015.

H.      This Agreement is neither an admission of liability by the Defendants nor a concession by the United States and Relator that their claims are not well founded. Defendants deny the allegations of the United States and Relator.

I.      To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.      Defendants shall pay to the United States SEVENTEEN MILLION DOLLARS ($17,000,000.00) (the "Settlement Amount") in accordance with the payment schedule attached hereto as Exhibit A ("Payment Schedule").  On the Effective Date of this Agreement, as defined in Paragraph 26, this sum shall constitute a debt due and

4

immediately owing to the United States. Defendants shall discharge their debt to the United States under the following terms and conditions:

a.     No later than seven business days (7) days after the Effective Date of this Agreement, Defendants shall pay to the United States the initial payment of Three Million Dollars ($3,000,000.00), followed by a payment of Two Million Dollars ($2,000,000) within six months (6) of the Effective Date of this Agreement, and shall thereafter make principal payments with interest at a rate of two percent (2%) per annum according to the Payment Schedule. In this Settlement Agreement, the phrase "Settlement Amount" includes the $17,000,000.00 and all accrued interest. Collectively, the Settlement Amount received by the United States shall be referred to as the "Settlement Proceeds."

b.     All payments to the United States shall be made by electronic funds transfer, pursuant to written instructions to be provided by the United States Attorney's Office for the Southern District of Florida. The Settlement Amount or any portion thereof may be prepaid without penalty.

2.     In the event that Defendants fail to pay any amount due to the United States in accordance with the Payment Schedule, within fifteen (15) business days of the date upon which such payment is due, Defendants shall be in Default of their payment obligations ("Default"). The United States will provide written notice of the Default, and Defendants shall have an opportunity to cure such Default within fifteen (15) business days from the date of receipt of the notice. Notice of Default will be delivered to Ron Lowy at 501 N.E. First Avenue, Suite 200, Miami, Florida 33132 and Jacqueline Arango at One Southeast Third Avenue, 25th Floor, Miami, Florida 33131, or to such other

5

representative(s) as the Defendants shall designate in advance in writing.  If Defendants fail to cure the Default within fifteen (15) business days of receiving the Notice of Default:  (1) any dismissals as to Defendants shall, at the United States' option, be null and void; (2) the Settlement Amount referenced in Paragraph 1 above, less any payments already made, shall become immediately due and payable and additional interest shall accrue at the rate of 12% per annum compounded daily from the date of Default on the remaining unpaid total (principal and interest balance) until payment of the Settlement Amount is made in full; and (3) the Consent Judgment (attached hereto as Exhibit B) shall be entered by the Court in the amount of the unpaid balance owed by the Defendants.  Defendants shall pay the United States all reasonable costs of collection and enforcement under this Paragraph, including attorney's fees and expenses.

3.     Conditioned upon the United States receiving the Settlement Amount payments from Defendants, the United States agrees that it shall pay to Relator by electronic funds transfer 25 percent of each such payment received under the Settlement Agreement as soon as feasible after receipt of the payment.

4.     Relator's Claims

a.     Conditioned upon Defendants' full payment of the Settlement Amount (as described in Paragraph 1) and the payments to Relator (as described in Paragraph 3), Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Defendants, together with their current and former direct and indirect subsidiaries, parent companies, brother and sister companies, affiliates, and divisions; and its and their respective current and former owners, officers, directors, employees, agents, and shareholders; and the predecessors, successors, transferees, and assigns of any of

6

them from any and all civil monetary claims the Relator has or may have on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733, as well as any other claims the Relator has or may have, including but not limited to any and all claims filed in the original and amended complaints in this action, and any other claims, under the law of any nation.

b.    Contemporaneous with the execution of this Agreement, and in addition to Relator's release of the Covered Conduct, as well as all other claims alleged in Paragraph B or otherwise arising out of the subject of the Civil Action, Relator and Hebrew Homes are entering into a separate Separation and Full General Release Agreement effective June 1, 2015, the terms of which shall remain confidential to the parties.

c.    In addition to paying the Settlement Amount, Defendants agree to pay the Relator's counsel reasonable attorneys' fees and costs in connection with the Litigation up through May 1, 2015, under 31 U.S.C. § 3730(d) and/or 31 U.S.C. § 3730(h), but the reasonable amount of fees and costs is in dispute. The Parties agree that the dispute concerning the amount of Relator's statutory attorneys' fees and costs up through May 1, 2015 will be resolved separately, either through agreement, litigation or a subsequently agreed-to mediation or arbitration process. The foregoing phrase does not indicate an agreement to mediate or arbitrate. The determination and payment of attorneys' fees and costs in connection with the Litigation under 31 U.S.C. § 3730(d) and/or 31 U.S.C. § 3730(h), or the failure to determine and pay those fees and costs, shall not delay or prevent the effectiveness or enforcement of the balance of either this Settlement Agreement or the separate Severance and Full General Release Agreement.

Both agreements contain extensive mutual release language; those releases do not prevent Relator from seeking fees and expenses in accordance with this paragraph, nor do they prevent defendants from asserting any claim, defense, or argument in response to the reasonable amount of fees and costs sought by Relator.

5.     Subject to the exceptions in Paragraph 9 (concerning excluded claims) below, and conditioned upon Defendants' full payment of the Settlement Amount, the United States releases Defendants, and volunteer board members of Hebrew Homes, Marvin Greenwald, Alan Randolph, Michael Aller, Don Konetz, Casey Klein, Yossi Duchman, Tonya Krayer, Kimberly Froelich, Rabbi Benjamin Korf, Dr. Rafael Soto, Daniel Holtz, Dr. Sanford Ziff, Dr. Irwin Roth, Alan Hirschfeld, Eliot Kalus, Harry Fruhman, Ben Rozsansky, Russell Galbut, Martin Wasserman, Mr. Zubkoff, Joan Brent, William Eck and Ronald Lowy (the "Board Members"), from any civil monetary claim or administrative monetary claim the United States has brought, could have brought, or may bring for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the civil monetary penalty provisions of the Stark Statute, 42 U.S.C. §§ 1395nn(g)(3) or (4); or the common law theories of payment by mistake, unjust enrichment, and fraud, and any other statute or common law theories creating causes of action for civil damages or penalties for engaging in the Covered Conduct.

6.     Subject to the exceptions in Paragraph 9 below, and conditioned upon Defendants' full payment of the Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Defendants, including the Board Members, from any civil monetary claim the Relator has on behalf of the United States,

as contained in the Civil Action, under the False Claims Act, 31 U.S.C. §§ 3729-3733, from any and all claims arising out of the alleged wrongdoing asserted in the Civil Action or otherwise arising out of the Relator's employment with Hebrew Homes, from any and all liability under 31 U.S.C. § 3730(h), and from any and all liability, claims, demands, actions, or causes of action, whether known or unknown, fixed or contingent, in law or equity, in contract or tort, under any federal or state statute or regulation or common law, that Relator would have standing to bring in any capacity as of the Effective Date of this Agreement.  Relator represents and warrants that he has not assigned or transferred any claims to any person, entity, or thing.

7.       In consideration of the obligations of Defendants in this Agreement, and the Corporate Integrity Agreement ("CIA"), entered into between OIG-HHS and Hebrew Homes, and conditioned upon Defendants full payment of the Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Hebrew Homes under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in Paragraph 9 (concerning excluded claims), below, and as reserved in this Paragraph.  The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Hebrew Homes from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct.  Nothing in this Paragraph

precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 9, below.

8.      OIG-HHS expressly reserves all rights to institute, direct, or to maintain any administrative action seeking exclusion against Mr. Zubkoff from Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) under 42 U.S.C. § 1320a-7(a) (mandatory exclusion), or 42 U.S.C. § 1320a-7(b) or 42 U.S.C. § 1320a-7a (permissive exclusion).

9.      Notwithstanding the releases given in paragraphs 5, 6, and 7 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

        a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

        b.      Any criminal liability;

        c.      Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

        d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

        e.      Any liability based upon obligations created by this Agreement;

        f.      Any liability of individuals (including current or former directors, officers, employees, agents, or shareholders of Hebrew Homes) who receive written notification that they are the target of a criminal investigation (as defined in the United States Attorneys' Manual), are

10

indicted or charged, or who enter into a plea agreement, related to the Covered Conduct.

10.     Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payment described in Paragraphs 1 and 2, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

11.     Defendants have provided sworn financial disclosure statements ("Financial Statements") to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. Defendants warrant that the Financial Statements are complete, accurate, and current.  If the United States learns of asset(s) in which Defendants have an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States learns of any misrepresentation by Defendants on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by Five Hundred Thousand Dollars ($500,000) or more, the United States may at its option:  (a) rescind this Agreement and file suit based on the Covered Conduct, or (b) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of the

amount Defendants previously undisclosed. Defendants agree not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

12.    In the event that the United States, pursuant to Paragraph 11 (concerning disclosure of assets), above, opts to rescind this Agreement, Defendants agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 30 calendar days of written notification to Defendants that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on Effective Date of the Agreement.

13.    Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

14.    Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have

asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

15.     Defendants fully and finally release the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Relator, related to the allegations in the complaint filed in the Civil Action and the Relator's investigation and prosecution thereof.  This paragraph includes without limitation any and all claims arising out of Relator's employment by Defendants, any alleged wrongdoing arising out of the Relator's employment with Hebrew Homes, and from any and all liability, claims, demands, actions, or causes of action, whether known or unknown, fixed or contingent, in law or equity, in contact or tort, under any federal or state statute or regulation or common law, that Defendants would or might have standing to bring against Relator or his heirs, assigns, attorneys, or anyone else associated with Relator as of the Effective Date of this Agreement.  Defendants represent and warrant that they have not assigned or transferred any claims to any person, entity, or thing.

16.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor, fiscal intermediary, carrier, or any state payer, related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, and agree not to appeal any such denials of claims.

17.    Defendants agree to the following:

    a.    Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, including present or former officers, directors, employees, shareholders, and agents in connection with:

        (1)    the matters covered by this Agreement;

        (2)    the United States' audit(s) and civil and criminal investigation(s) of the matters covered by this Agreement;

        (3)    Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

        (4)    the negotiation and performance of this Agreement;

        (5)    the payment Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to Relator, including costs and attorneys fees; and

(6)     the negotiation of, and obligations undertaken

pursuant to the CIA to:

(i)     retain an independent review organization to

perform annual reviews as described in

Section III of the CIA; and

(ii)    prepare and submit reports to the OIG-HHS,

are unallowable costs for government contracting purposes and under the Medicare

Program, Medicaid Program, TRICARE Program, and Federal Employees Health

Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).  However,

nothing in paragraph 17.a.(6) that may apply to the obligations undertaken pursuant to the

CIA affects the status of costs that are not allowable based on any other authority

applicable to Defendants.

b.     Future Treatment of Unallowable Costs:  Unallowable Costs shall

be separately determined and accounted for in nonreimbursable

cost centers by Defendants, and Defendants shall not charge such

Unallowable Costs directly or indirectly to any contracts with the

United States or any State Medicaid program, or seek payment for

such Unallowable Costs through any cost report, cost statement,

information statement, or payment request submitted by

Defendants or any of its subsidiaries or affiliates to the Medicare,

Medicaid, TRICARE, or FEHBP Programs.

c.     Treatment of Unallowable Costs Previously Submitted for

Payment:  Defendants further agree that within 90 days of the

15

Effective Date of this Agreement it shall identify to applicable

Medicare and TRICARE fiscal intermediaries, carriers, and/or

contractors, and Medicaid and FEHBP fiscal agents, any

Unallowable Costs (as defined in this Paragraph) included in

payments previously sought from the United States, or any State

Medicaid program, including, but not limited to, payments sought

in any cost reports, cost statements, information reports, or

payment requests already submitted by Defendants or any of its

subsidiaries or affiliates, and shall request, and agree, that such

cost reports, cost statements, information reports, or payment

requests, even if already settled, be adjusted to account for the

effect of the inclusion of the Unallowable Costs.  Defendants agree

that the United States, at a minimum, shall be entitled to recoup

from Defendants any overpayment plus applicable interest and

penalties as a result of the inclusion of such Unallowable Costs on

previously-submitted cost reports, information reports, cost

statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the

United States pursuant to the direction of the Department of Justice and/or the affected

agencies.  The United States reserves its rights to disagree with any calculations

submitted by Defendants or any of its subsidiaries or affiliates on the effect of inclusion

of Unallowable Costs (as defined in this Paragraph) on Defendants or any of its

subsidiaries or affiliates' cost reports, cost statements, or information reports.

16

d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph, except that it shall not be deemed an Unallowable Cost for Hebrew Homes to retain a maximum of two (2) medical directors per facility or, in the alternative, one (1) medical director and one (1) assistant medical director.

18.    Defendants agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement regarding the Covered Conduct. Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of Hebrew Homes' directors, officers, employees, and medical directors and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, employees, and medical directors for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

19.    This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 20 (waiver for beneficiaries paragraph), below.

20.    Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct. For purposes of this Paragraph, payments already made to Hebrew Homes are excluded from Defendants' waiver and agreement.

21.    Defendants warrant that they have reviewed their financial situation and that they currently are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Defendants was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

22.    If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, Defendants commence, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Defendants' debts, or seeking to adjudicate Defendants as bankrupt or insolvent; or (b)

18

seeking appointment of a receiver, trustee, custodian, or other similar official for Defendants or for all or any substantial part of Defendants' assets, Defendants agree as follows:

     a.     Defendants' obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Defendants shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Defendants' obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Defendants were insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Defendants.

     b.     If Defendants' obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Defendants or the claims that would otherwise be covered by the releases provided in Paragraphs 5, 6, and 7 above. Defendants agree that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the

action, case, or proceedings described in the first clause of this Paragraph, and Defendants shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within Three Hundred Sixty Five (365) calendar days of written notification to Defendants that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the Effective Date of this Agreement; and (iii) the United States has a valid claim against Defendants in the amount of $19,830,027, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

c.      Defendants acknowledge that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

23.     Upon receipt of the $3,000,000 payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1), as follows:

      a.      dismissal shall be with prejudice to Relator's claims in the Civil Action, pursuant to and consistent with the terms and conditions of this Agreement; and

      b.      dismissal shall be with prejudice as to the United States' claims as to the Covered Conduct, pursuant to and consistent with the terms and conditions of this Agreement.

24.      Each Party shall bear its or his own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, except as otherwise provided herein.

25.      Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

26.      This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Southern District of Florida. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

27.      This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

28.      The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

29.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

30.     This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

31.     This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

32.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

33.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 6/16/15          BY: _____
                        FRANKLIN G. MONSOUR, JR.
                             Assistant United States Attorney
                             United States Attorney's Office
                             Southern District of Florida

DATED: 6/15/15          BY: _____
                        ADAM SCHWARTZ
                             Trial Attorney
                             Commercial Litigation Branch
                             Civil Division
                             United States Department of Justice

DATED: _____        BY: _____
                        ROBERT K. DECONTI
                             Assistant Inspector General for Legal Affairs
                             Office of Counsel to the Inspector General
                             Office of Inspector General
                             United States Department of Health and
                             Human Services

23

THE UNITED STATES OF AMERICA

DATED: _____      BY: _____
                       FRANKLIN G. MONSOUR, JR.
                           Assistant United States Attorney
                           United States Attorney's Office
                           Southern District of Florida

DATED: _____      BY: _____
                       ADAM J. SCHWARTZ
                           Trial Attorney
                           Commercial Litigation Branch
                           Civil Division
                           United States Department of Justice

DATED: 6/16/15         BY: _Robert K. DeConti_
                       ROBERT K. DECONTI
                           Assistant Inspector General for Legal Affairs
                           Office of Counsel to the Inspector General
                           Office of Inspector General
                           United States Department of Health and
                           Human Services

23

HEBREW HOMES HEALTH NETWORK, INC.

DATED: 6-16 15          BY: _____

RON S. LOWY
Chairman of the Board of Directors,
Hebrew Homes Network, Inc.

DATED: 6|16|2015         BY: _____

RACHEL K. BEIGE
Counsel for Hebrew Homes Network, Inc.

24

WILLIAM ZUBKOFF

DATED: 6/15/2015   BY: _____
                    WILLIAM ZUBKOFF

DATED: 6/15/15   BY: _____
                    JACQUELINE M. ARANGO
                    Counsel for William Zubkoff

25

**RELATOR**

DATED: 6/15/15     BY: _____
STEPHEN M. BEAUJON

DATED: 15 JUNE 15     BY: _____
RICK M. MORGAN
Counsel for Relator, Stephen M. Beaujon

DATED: 6/15/15     BY: _____
RYAN K. STUMPHAUZER
Counsel for Relator, Stephen M. Beaujon

26

# EXHIBIT A

**EXHIBIT A**

PAYMENT SCHEDULE

| Date | Payment | Principal | Interest | Balance |
|------|---------|-----------|----------|---------|
| | | | | $17,000,000 |
| Within 7 days of Effective Date of Settlement Agreement | $3,000,000 | $3,000,000 | -- | $14,000,000 |
| Within 6 months of Effective Date of Settlement Agreement | $2,000,000 | $2,000,000 | -- | $12,000,000 |
| Within 12 months of Effective Date of Settlement Agreement | $2,000,000 | $2,000,000 | -- | $10,000,000 |
| Within 24 months of Effective Date of Settlement Agreement | $2,200,000 | $2,000,000 | $200,000 | $8,000,000 |
| Within 36 months of Effective Date of Settlement Agreement | $2,160,000 | $2,000,000 | $160,000 | $6,000,000 |
| Within 48 months of Effective Date of Settlement Agreement | $2,120,000 | $2,000,000 | $120,000 | $4,000,000 |
| Within 60 months of Effective Date of Settlement Agreement | $2,080,000 | $2,000,000 | $80,000 | $2,000,000 |
| Within 72 months of Effective Date of Settlement Agreement | $2,040,000 | $2,000,000 | $40,000 | -- |
| Total | $17,600,000 | $17,000,000 | $600,000 | |

# EXHIBIT B

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number: 12-20951-CIV- MORENO

UNITED   STATES   OF   AMERICA   *ex   rel*.
STEPHEN M. BEAUJON,

      Plaintiffs,

vs.

PLAZA HEALTH NETWORK, *et al*.,

      Defendants.
_____/

### CONSENT JUDGMENT

THIS CAUSE is before the Court upon the consent of the United States of America

acting through the Department of Justice and on behalf of the Office of the Inspector general of

the Department of Health and Human Services (collectively, the "United States"), and

defendants Plaza Health Network aka Hebrew Homes Health Network, Inc. *et al*. and William

Zubkoff, as set forth in the Settlement Agreement attached as Exhibit A hereto (collectively

"Defendants"). The United States and Defendants are collectively referred to as "the Parties."

The Defendants consent to entry of this judgment having been established by virtue of the

Settlement Agreement, it now appears to the Court as follows:

    1.   This Court has jurisdiction over the Parties as well as over the subject matter of this

action.

    2.   This instant litigation was originally filed as a *qui tam* by a private party alleging

fraudulent conduct on the part of the Defendants. The Parties negotiated a comprehensive settlement that resolved all claims of the United States against the Defendants. A settlement agreement ("Agreement") was prepared, signed by the Parties, and took effect on June 16, 2015.

3. The Agreement calls for the Defendants to make an initial payment within seven days of execution and complete payment of the settlement amount within six years of execution. The Defendants are in default under the Agreement, having failed to timely meet their payment obligations. Notice of default has been given to the Defendants and the thirty-day period for curing the default provided by the Agreement has expired.

4. Pursuant to the attached Agreement, the Defendants agreed that in the event of a default, a judgment would be entered in favor of the United States against the Defendants in this action, for the amount set forth below. Such a default has occurred.

**WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED and DECREED** that judgment be entered in favor of the United States and against the Defendants in the amount of $17,000,000 plus interest, as set forth in the attached Agreement, less any amount previously paid by the Defendants to the United States pursuant to the Agreement.

**DONE and ORDERED** in Chambers at Miami, Florida, this ___ day of _____, 201_.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE